UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MARK JAMES FISHER,

               Petitioner,                Case Number: 03-10029-BC
                                        Honorable David M. Lawson

v.

WARDEN BOOKER,

               Respondent.

_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

      The petitioner, Mark James Fisher, a state inmate currently incarcerated at the Ryan Correctional Facility in Detroit, Michigan, has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  He was convicted in 1997 of armed robbery, Mich. Comp. Laws § 750.529; first-degree home invasion, Mich. Comp. Laws § 750.110a(2); larceny in a building, Mich. Comp. Laws § 750.360; and cutting telephone lines, Mich. Comp. Laws § 750.540.  The larceny conviction was later vacated on double jeopardy grounds.  The petitioner eventually was sentenced to concurrent prison terms of seventeen to thirty years for the robbery, twelve to twenty years for the home invasion, and one to two years for cutting telephone lines.  He contends that his sentences are unconstitutional because they were based upon materially false information, violated the prohibition against double jeopardy, and are disproportionate.  He also contends that the court-ordered reimbursement of attorney's fees was improper.  The respondent asserts that the petitioner merely alleges errors of state law that are not cognizable on habeas review.  The Court will deny the petition for lack of merit in the grounds presented.

I.

The petitioner's convictions arose from a robbery that occurred at the home of Helen Borek on April 15, 1996. Ms. Borek testified that she lived alone in an old farmhouse on Mayville Road in Koylton Township, Michigan. She awoke that night at approximately 10:20 p.m. when she heard a voice say, "Is my wife here?" Trial Tr. vol. II at 6. Ms. Borek asked who was there, and the voice answered "Jim." She testified that she went downstairs and found a man standing in her kitchen. The man said, "I want your keys, and I want your money." *Id*. at 9. When Ms. Borek replied that she had no money and would go outside to get her keys, the man pushed her back, reached in his pocket and showed her a knife. Ms. Borek gave him her purse, which contained $70 and her car keys. The man took her purse, cut the telephone wires, and left. After the man left, Ms. Borek waited in her house for some time because she feared the man was hiding outside her home; then she went to a neighbor's house to call for help. Ms. Borek was not wearing her glasses when she entered the kitchen but was able to give a general description of the man. She described him as wearing dark clothes and a jacket with a parka hood.

Alvearna Beste, who also lived on Mayville Road, testified that she answered her door on April 15, 1996 at approximately 9:00 p.m. to find a man wearing a dark sweatshirt and hood that obscured his face. The man, who initially identified himself as "Mark Smith," told her that his car had broken down and he needed to use her phone. Ms. Beste refused to let him in but offered to make a telephone call for him. She received no answer when she dialed the first phone number he gave her, so the man gave her a second number. Ms. Beste called the second number and advised the woman who answered the phone that "Mark Smith's" car had broken down. When Ms. Beste returned to the front door, the man pulled off his hood and asked if she knew who he was. She

testified that she recognized him to be the petitioner because he had been a friend of her son when they were younger.  The petitioner then asked if he could use her bathroom, but Ms. Beste again refused to let him in.  She left the door to answer the phone, and when she returned the petitioner was gone.  Ms. Beste further testified that her storm door remained locked throughout her entire interaction with the petitioner and the petitioner repeatedly pulled on the door in an attempt to open it.

Teresa Lynch testified that she used to live with the petitioner.  On April 15, 1996, she was at Fred Kendall's house when the petitioner arrived at approximately 11:00 p.m..  Lynch testified that the petitioner pulled out a knife and some money and said, "Look what I did."  Against Lynch's wishes, the petitioner took the money from her tax refund and some car keys from a tabletop and left the house.  Ms. Lynch testified that she saw the petitioner several days later and he told her that police had not yet discovered that he had committed a robbery on Mayville Road and cut an old woman's telephone wires.

A jury in Tuscola County, Michigan found the petitioner guilty of armed robbery, first-degree home invasion, larceny in a building, and cutting telephone lines.  On April 11, 1997, the circuit court judge sentenced the petitioner to concurrent prison terms of twenty-five to fifty years for the armed robbery, twelve to twenty years for the home invasion, three to four years for the larceny, and one to two years for cutting telephone lines.

The petitioner appealed his convictions to the Michigan Court of Appeals, presenting the following claim, among others:

> Mr. Fisher's conviction of home invasion, armed robbery, and larceny in a building violated both his federal and state constitutional rights against double jeopardy.

The Michigan Court of Appeals vacated the larceny conviction on double jeopardy grounds and affirmed the petitioner's convictions on the remaining counts. The court of appeals further held that the trial court erred  in sentencing the petitioner when it impermissibly relied upon the fact that the victim suffered a stroke eight months after the robbery where there was no factual evidence to support the trial court's determination that the petitioner caused her stroke. The court of appeals thus vacated the petitioner's sentences and remanded for resentencing. *People v. Fisher*, No. 202821 (Mich. Ct. App. Mar. 23, 1999).

On remand, the trial court resentenced the petitioner to seventeen to thirty years for the armed robbery, twelve to twenty years for the home invasion, and one to two years for cutting the telephone lines. The petitioner then filed an appeal of right from his resentencing in the Michigan Court of Appeals, presenting the following claims:

> I. The sentencing guidelines were based on materially false information, depriving defendant of his due process right to be sentenced on the basis of accurate information.
>
> > A. OV 25 was misscored.
> >
> > B. OV 2 was misscored.
>
> II. The sentence of 17 to 30 years for armed robbery is disproportionate.
>
> III. The objected-to inaccurate or improper information in the presentence report must be deleted.

The petitioner also sought to add a supplemental claim:

> I. Defendant has been denied due process of law by the trial court's illegal order of reimbursement.

The Michigan Court of Appeals affirmed the petitioner's sentences. *People v. Fisher*, No. 225794 (Mich. Ct. App. Jan. 11, 2002). The petitioner then filed an application for leave to appeal

-4-

in the Michigan Supreme Court presenting the same claims presented in his second appeal of right to the Michigan Court of Appeals.  The Michigan Supreme Court denied leave to appeal.  *People v. Fisher*, No. 120889 (Mich. Aug. 30, 2002).

The petitioner then filed the present petition for a writ of habeas corpus on January 30, 2003 presenting the following claims:

I.      Sentence was based on materially false information depriving Petitioner of his due process right to be sentenced on the basis of accurate information.

II.     Sentence was based on violation of Petitioner's protection against double jeopardy.

III.    Trial court's order of reimbursement is illegal.

IV.     The sentence of 17 to 30 years for armed robbery is disproportionate.

The respondent contends that the petitioner's first, second, and fourth claims are state law claims that are not cognizable on habeas review and the petitioner's third claim is unexhausted and also not cognizable on habeas review.

As an initial matter, the Court notes that the petitioner did present his third claim both in a supplemental brief to the Michigan Court of Appeals and in his brief to the Michigan Supreme Court; furthermore, because the Court finds that the claim is not cognizable on habeas review, the claim will be dismissed regardless of exhaustion.

II.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering applications for a writ of habeas corpus raising constitutional claims.  *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003).

-5-

As amended, 28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000); internal quotes omitted). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous").

The Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

The Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . . .
>
> [A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 409, 410-11. *See also King v. Bobby*, 433 F.3d 483, 489 (6th Cir. 2006); *Harbison v. Bell*, 408 F.3d 823, 828-29 (6th Cir. 2005); *McAdoo v. Elo*, 365 F.3d 487, 493 (6th Cir. 2004); *Rockwell v. Yukins*, 341 F.3d 507, 512 (6th Cir. 2003) (en banc).

A.

The petitioner argues that he was deprived of his due process right to be sentenced on the basis of accurate information where the trial court considered facts not sufficiently proven in court in calculating his sentencing guidelines. He also asserts that the trial court erred when it denied his request to correct the Presentence Investigation Report (PSIR).

The petitioner first maintains that he did not commit three or more contemporaneous criminal acts and that the state court erred in calculating his sentence on the basis of this determination. He asserts that the trial court misscored Offense Variable (OV) 25 under Michigan's sentencing guideline scheme by considering allegations made by his ex-girlfriend, Theresa Lynch. Criminal charges against the petitioner based upon Ms. Lynch's testimony that he took money from her on the night of April 15, 1996 ultimately were dismissed, and her testimony at the preliminary examination and at trial were inconsistent. Nevertheless, the petitioner was allotted points for OV 25 on the basis of Ms. Lynch's allegations. That increased the offense level and subjected the petitioner to a greater minimum sentence. The petitioner also maintains that the court incorrectly scored OV 25 based on his behavior at Ms. Beste's house, where he asked to use the telephone, because his actions there did not constitute a criminal act.

The petitioner also argues that the trial court improperly determined that he terrorized Ms. Borek. The petitioner says that OV 2 was misscored because points were given based upon bodily injury and terrorism when no evidence was offered to show that he caused bodily injury or terrorism to Ms. Borek.

In addition, the petitioner contends that the trial court erred in refusing his request to correct the PSIR. He argues that the PSIR incorrectly included misdemeanor traffic offenses and

uncounseled convictions and incorrectly referred to a probation violation and charges that had been

dismissed.

The Michigan Court of Appeals, the last state court to issue a reasoned opinion regarding the

claim that the petitioner's sentence was based upon inaccurate information, rejected these

arguments, stating:

> At resentencing, defendant raised objections to the scoring of the applicable judicial sentencing guidelines, and to the inclusion of certain information in the presentence information report (PSIR). Defendant objected to the scoring of Offense Variable (OV) 2, physical attack and/or injury, at twenty-five points on the ground that the robbery victim was subjected to terrorism. He also objected to the scoring of OV 25, contemporaneous criminal acts, at fifteen points for three or more contemporaneous criminal acts consisting of his vacated larceny conviction, his actions against Lynch, and his actions against Mrs. Beste. The trial court rejected defendant's arguments regarding the scoring of the guidelines, and declined to remove certain information regarding defendant's prior record, certain dismissed charges, and an allegation by Lynch from the PSIR. . . .

> Application of the guidelines presents a cognizable claim for review only if: (1) a factual predicate is wholly unsupported; (2) a factual predicate is materially false; and (3) the sentence is disproportionate. *People v. Mitchell*, 454 Mich. 145, 177; 560 N.W.2d 600 (1997). If the sentence is proportionate, an error in the calculation of the guidelines provides no basis for relief. *People v. Raby*, 456 Mich. 487, 496; 572 N.W.2d 644 (1998).

> Initially, defendant argues that he is entitled to resentencing because the trial court's misscoring of OV 2 and OV 25 resulted in his being sentenced on inaccurate information. Defendant asserts that no evidence supported the trial court's findings that the elderly robbery victim was terrorized, or that he engaged in three or more contemporaneous criminal acts. We disagree. The judicial sentencing guidelines define "terrorism" as "conduct that is designed to increase substantially the fear and anxiety that the victim suffers during the offense." The evidence supported the scoring of OV 2 at twenty-five points.

> The evidence showed that defendant broke into the home of the elderly robbery victim during the night, and enticed her to come downstairs by pretending to be a person the victim knew. He then displayed a knife, cut the victim's telephone wire while she watched, and demanded money and her keys. The victim testified that after defendant left she could not take any action for a time because she was afraid that defendant was hiding in the bushes outside her home. We conclude that

defendant's act of cutting the victim's telephone wire while she watched was specifically designed to substantially increase the victim's fear. The trial court's scoring of OV 2 at twenty-five points was not wholly unsupported by the evidence or based on a materially false predicate. Defendant has not stated a cognizable claim for review in regard to OV 2. *Mitchell, supra*.

Defendant's argument regarding the scoring of OV 25 at fifteen points is similarly without merit. The fact that the charges resulting from the incident with Lynch were dismissed is irrelevant. The trial court was entitled to rely on Lynch's preliminary examination testimony to find by a preponderance of the evidence that defendant engaged in acts of unarmed robbery and larceny.

Furthermore, the evidence established by a preponderance of the evidence that defendant attempted a larceny at the home of Mrs. Beste. Mrs. Beste did not unlock her screen door; nevertheless, defendant kept pulling on the door in an attempt to open it and gain entrance to the house. The fact that defendant engaged in this behavior on the same evening that he in fact invaded the home of another elderly woman and committed a robbery supported an inference that he intended to commit a robbery or a larceny in the home of Mrs. Beste. *Id*.

. . .

Defendant argues that he was entitled to have objected to information regarding prior uncounseled convictions for traffic offenses, dismissed charges, a probation violation, and an allegation by Lynch removed from the PSIR. We disagree. Defendant correctly notes that prior uncounseled convictions should be stricken from a PSIR. *People v. Martinez*, 193 Mich. App. 377, 386; 485 N.W.2d 124 (1992). However, defendant did not make even a prima facie showing that he was not represented by counsel on those occasions. The trial court stated that it gave very little if any weight to the existence of those convictions. The trial court acted within its discretion in so concluding.

Furthermore, the trial court did not err by declining to remove references to dismissed Florida charges and the dismissed charges resulting from the incident with Lynch. A PSIR may include references to arrests and charges that did not result in convictions. . . . . Finally, the statement that defendant reportedly attacked Lynch is included in the PSIR's criminal history section. A PSIR must contain a defendant's prior criminal history. M.C.R. 6.425(A). The police report indicated that Lynch stated that defendant pushed her and tackled her in the yard. The PSIR is not inaccurate in that it states that defendant "reportedly" attacked Lynch. The trial court did not err in declining to remove this statement.

*Fisher*, No. 225794, slip op. at 2-3 (some citations omitted).

-10-

A fundamental principle of sentencing holds that "a judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come." *United States v. Grayson*, 438 U.S. 41, 50 (1978) (quoting *United States v. Tucker*, 404 U.S. 443, 446 (1972)). The Supreme Court, however, has held that a sentence imposed on the basis of "misinformation of constitutional magnitude" violates due process. *Tucker*, 404 U.S. at 447. A sentence violates due process when it was pronounced "on a foundation [that was] extensively and materially false, which the prisoner had no opportunity to correct." *Townsend v. Burke*, 334 U.S. 736, 741 (1948). A sentence must be set aside where "the defendant can demonstrate that false information formed part of the basis for the sentence. The defendant must show, first, that the information before the sentencing court was false, and, second, that the court relied on the false information in passing sentence." *United States v. Stevens*, 851 F.2d 140, 143 (6th Cir. 1988).

The petitioner has failed to show that the factors considered by the trial court in sentencing him were materially false or constituted misinformation of a constitutional magnitude. The sentencing judge's consideration of other contemporaneous crimes the petitioner committed was based not on misinformation or on materially false information, but on the judge's interpretation of the petitioner's actions at Ms. Beste's house and the testimony of Ms. Lynch to the extent that the judge believed it. The petitioner took advantage of his opportunity at the sentencing hearing to argue that he did not intend to rob Ms. Beste that night and that Ms. Lynch's testimony was not credible. Thus, the petitioner was not sentenced in violation of the Supreme Court's ruling in *Townsend*. *See Townsend*, 334 U.S. at 741. Nor did the sentencing judge rely on false information when he determined that the victim was terrorized. This determination was based on the judge's

-11-

interpretation of the circumstances surrounding the crime.  To the extent that the petitioner claims that the sentencing judge erred in scoring the guidelines on the basis of state law, the claim is not cognizable on habeas review.  It is well-established that "federal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)).  The petitioner has failed to show that the conclusion of the Michigan Court of Appeals was contrary to or an unreasonable application of Supreme Court precedent.  Therefore, the petitioner is not entitled to habeas corpus relief with respect to this claim.

The petitioner has filed an amendment to his petition arguing that his sentence violated the holding of *Blakely v. Washington*, 542 U.S. 296 (2004), because certain factors used to determine his sentence were not proven beyond a reasonable doubt.  The Court rejects this amendment to the original petition because the claim does not appear to be exhausted.  Even if this claim were exhausted, however, it would not entitle the petitioner to habeas relief because the *Blakely* decision has not been held to apply retroactively to cases on collateral review.  *See Schardt v. Payne*, 414 F.3d 1025, 1027 (9th Cir. 2005) (holding that *Blakely* is not applicable retroactively to convictions that became final prior to its publication); *United States v. Price*, 400 F.3d 844, 849 (10th Cir.), *cert. denied*, 126 S. Ct. 731 (2005) (holding the same); *Varela v. United States*, 400 F.3d 864, 867 (11th Cir.), *cert. denied*, 126 S. Ct. 312 (2005) (holding that *Apprendi*'s progeny, including *Booker* and *Blakely*, do not apply retroactively to cases on collateral review).  The Sixth Circuit has held that *United States v. Booker*, 543 U.S. 220, 226-27 (2005), which applies the principles outlined in *Blakely* to the federal sentencing guidelines, is not applicable retroactively to cases on collateral review.  *United States v. Humphress*, 398 F.3d 855, 857 (6th Cir. 2005).  Moreover, in her *Blakely* dissent, Justice O'Connor acknowledged that *Apprendi v. New Jersey*, 530 U.S. 466 (2000), a case

-12-

on which *Blakely* is based, did not have retroactive effect. *Blakely*, 542 U.S. at 323 (O'Connor, J.,

dissenting) (noting that the Court held in *Schriro v Summerlin*, 542 U.S. 348 (2004), which was

decided on the same day as *Blakely*, "that *Ring* (and *a fortiori Apprendi*) does not apply retroactively

on habeas review"). The Court, therefore, rejects the petitioner's amendment to his petition

asserting a *Blakely* claim.

B.

In his second claim for habeas corpus relief, the petitioner argues that his sentencing placed

him in double jeopardy when the trial court counted the larceny conviction that had been vacated

on double jeopardy grounds as a contemporaneous criminal act under OV 25. The last state court

to issue a reasoned opinion regarding this claim, the Michigan Court of Appeals, held that the trial

court could consider the larceny conviction that was vacated on double jeopardy grounds in

determining that the petitioner committed three or more contemporaneous criminal acts:

> Finally, defendant's assertion that his vacated conviction of larceny cannot be
> considered for purposes of scoring OV 25 is without merit. The scoring of the
> guidelines does not implicate double jeopardy issues. *People v. Gibson*, 219 Mich.
> App. 530, 535; 557 N.W.2d 141 (1996). Defendant has not stated a cognizable claim
> for review in regard to OV 25. *Mitchell, supra*.

*People v. Fisher*, slip op. at 3. In the case to which the court of appeals refers, the court held that

"the score a defendant receives on an offense variable is not a form of punishment" because

Michigan's sentencing guidelines "are merely a tool for gauging the seriousness of a particular

offense and offender in order the limit the disparity in sentences received by similarly situated

defendants." *People v. Gibson*, 219 Mich. App. 530, 535, 557 N.W.2d 141, 143 (1996). The system

of sentencing guidelines described in *Gibson* and applicable to the petitioner's case was an advisory

scheme devised by the Michigan judiciary. *See People v. Hegwood*, 465 Mich. 432, 438, 636

-13-

N.W.2d 127, 131 (2001). The Michigan legislature has since enacted a mandatory system of sentencing guidelines, effective January 1, 1999. *Ibid.*

The Double Jeopardy Clause of the Fifth Amendment provides that no person shall be "subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The Supreme Court has held that double jeopardy protections are inapplicable to sentencing proceedings "because the determinations at issue do not place a defendant in jeopardy for an 'offense.'" *Monge v. California*, 524 U.S. 721, 728 (1998). The Supreme Court has recognized a narrow exception to this general rule in the context of capital sentencing proceedings, holding that a capital defendant who had received a life sentence during a penalty phase that bore "the hallmarks of [a] trial on guilt or innocence" could not be eligible for a death sentence upon retrial following appeal. *Bullington v. Missouri*, 451 U.S. 430, 439 (1981). The Supreme Court has declined to extend this exception to non-capital sentencing proceedings. *Monge*, 524 U.S. at 734.

The Sixth Circuit has applied this general principle in cases somewhat similar to the petitioner's case. In *United States v. Wheeler*, 330 F.3d 407, 409 (6th Cir. 2003), a defendant whose community corrections sentence for a drug crime had been revoked and replaced with a period of incarceration when guns were found in his home challenged his sentence on double jeopardy grounds where the period of incarceration he received when the guns were found was used to enhance his sentence for possession of the guns. The Sixth Circuit held that the defendant had not been placed in double jeopardy by any double counting of the offense in the scoring of the sentencing guidelines. *Wheeler*, 330 F.3d at 413; s*ee also United States v. Fitzgerald*, 435 F.3d 484, 487 (4th Cir. 2006) (finding no double jeopardy where a defendant's sentence for knowingly failing to appear for sentencing was enhanced for committing an offense while on release).

-14-

To the extent that the petitioner argues that the trial court double counted his armed robbery offense in violation of state law, the claim is not cognizable on federal habeas corpus review.  *See Estelle*, 502 U.S. at 67.  Therefore, because double jeopardy protections are inapplicable to sentencing proceedings, the petitioner is not entitled to habeas corpus relief with respect to this claim.

C.

In his third claim for habeas corpus relief, the petitioner argues that the trial court erred in ordering him to pay attorney fees to reimburse court-appointed trial counsel.

This claim is not cognizable on federal habeas review.  The traditional purpose of the writ of habeas corpus is to obtain release from unlawful confinement.  *Wilkinson v. Dotson,* 544 U.S. 74, 79 (2005) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 486 (1973)).  Habeas corpus is premised on the theory that federal courts will provide a remedy to detainees who claim that their confinement violates the Constitution, laws, or treaties of the United States.  *See* 28 U.S.C. §§ 2241(c), 2254(a); *see also Preiser*,  411 U.S. at 485 (observing that "over the years, the writ of habeas corpus evolved as a remedy available to effect discharge from any confinement contrary to the Constitution or fundamental law, even though imposed pursuant to conviction by a court of competent jurisdiction").  The petitioner's claim that he was erroneously billed for court-appointed attorney's fees does not challenge his confinement.  Therefore, the petitioner is not entitled to habeas corpus relief on the basis of this claim.

The petitioner also argues that his armed robbery sentence on remand was vindictive and deprived him of due process; he points to the trial court's issuance of the order of reimbursement after his second sentencing as proof of vindictiveness.  Due process of law requires that

-15-

vindictiveness play no part in the sentence a defendant receives after a successful appeal. *See North Carolina v. Pearce*, 395 U.S. 711, 725 (1969). If a defendant is retried and receives a higher sentence than he did in his original proceedings, a presumption of vindictiveness applies unless the sentencing court advances reasons for the elevated sentence based on "objective information concerning identifiable conduct on the part of the defendant." *Id*. at 726. Where this presumption does not apply, a due process violation can be shown only through direct proof of vindictiveness. *Wasman v. United States*, 468 U.S. 559, 569 (1984).

The petitioner's original prison sentence for armed robbery was twenty-five to fifty years. Upon resentencing, the petitioner received a prison sentence of seventeen to thirty years for the armed robbery conviction. The petitioner's sentence upon remand was lower than his original sentence. Furthermore, the petitioner's argument that the addition of the sentencing enhancement for OV 25 made his sentence upon remand higher than it should have been is unavailing: in *United States v. Rodgers*, 278 F.3d 599 (6th Cir. 2002), the Sixth Circuit rejected the due process claim of a defendant who received the same sentence upon remand, in spite of his argument that his original sentence had been elevated erroneously because it should have included a reduction for acceptance of responsibility. The presumption of vindictiveness in *Pearce* does not apply.

The petitioner argues that the order of reimbursement, signed by the court the day after the petitioner requested the appointment of counsel to appeal his resentencing, shows that the trial court was motivated to punish him for appealing his sentence. However, the reimbursement order was signed on February 8, 2000, five days after the petitioner was resentenced. If the reimbursement order was meant to punish the petitioner for appealing his resentencing, it does not affect the validity of his sentence, which had already been handed down. A connection between the reimbursement

-16-

order and the petitioner's successful appeal of his original sentence is tenuous at best. At resentencing, the judge took note of the petitioner's participation in drug treatment programs and ultimately issued a sentence lower than his original sentence.

Moreover, the reimbursement order appears to be consistent with state law. Michigan courts find authority for charging criminal defendants with reimbursement of attorney's fees in Michigan Court Rule 6.005(C), which provides: "If a defendant is able to pay a part of the cost of a lawyer, the court may require contribution to the cost of providing a lawyer and may establish a plan for collecting the contribution." Mich. Ct. R. 6.005(C); *see also People v. Nowicki*, 213 Mich. App. 383, 387, 539 N.W.2d 590, 592 (1995). Under Michigan law, an attorney fee reimbursement obligation may not be imposed upon an acquitted defendant. Mich. Comp. Laws § 768.34.

The Supreme Court has held that a state may constitutionally require a person convicted of a criminal offense to repay the State the costs of providing him with counsel. *Fuller v. Oregon*, 417 U.S. 40 (1974). "The fact that an indigent who accepts state-appointed legal representation knows that he might someday be required to repay the costs of those services in no way affects his eligibility to obtain counsel." *Id*. at 53. In addition, the Supreme Court noted that the statute at issue in *Fuller* was narrowly tailored only to impose reimbursement obligations upon defendants able to pay. *Ibid*.

The petitioner has not shown that his sentence was vindictive in nature. Therefore, the Court finds that the petitioner is not entitled to habeas corpus relief with respect to this claim.

-17-

D.

In his final claim, the petitioner argues that he is entitled to habeas corpus relief because his prison sentence of seventeen to thirty years for the armed robbery conviction is grossly disproportionate.

A habeas petitioner who seeks to challenge the severity of a prison sentence on Eighth Amendment grounds faces a formidable challenge.  Generally, he may obtain relief only by demonstrating that a state court decision contravened or misapplied "clearly established" Supreme Court precedent.  However, the Supreme Court has acknowledged "that our precedents in this area have not been a model of clarity."  *Lockyer v. Andrade*, 538 U.S. 63, 72 (2003).  "Indeed, in determining whether a particular sentence for a term of years can violate the Eighth Amendment, we have not established a clear or consistent path for courts to follow."  *Ibid.*  Thus, the Supreme Court declared that the general applicability of the proportionality standard to term-of-years sentences was clearly established, but confessed a lack of clarity as to the factors lower courts should consider in making that determination.  *Ibid.*  The Court concluded that "the only relevant clearly established law amenable to the 'contrary to' or 'unreasonable application of' framework is the gross disproportionality principle, the precise contours of which are unclear, applicable only in the 'exceedingly rare' and 'extreme' case."  *Id*. at 73.

In *Lockyer*, the Supreme Court reversed the Ninth Circuit's grant of a writ of habeas corpus on the ground that two twenty-five-years-to-life sentences imposed under California's "three strikes" law, where the triggering felony was the theft of $150 worth of video tapes, violated the Cruel and Unusual Punishment Clause of the Eighth Amendment.  The Court noted that the "thicket" created by its jurisprudence consisted primarily of its decisions in *Solem v. Helm*, 463 U.S. 277 (1983),

-18-

*Harmelin v. Michigan*, 501 U.S. 957 (1991), and *Rummel v. Estelle*, 445 U.S. 263 (1980). The California state court observed that the proportionality rule set forth in *Solem* was cast into doubt by *Harmelin* and proceeded to analyze Andrade's sentence under the approach taken in *Rummel*, where the Supreme Court rejected a claim that a life sentence imposed under Texas' recidivist statute was grossly disproportionate to the theft felonies that formed the predicate for the sentence. The California court concluded that Andrade's sentence was not disproportionate. The Supreme Court held that this decision was not contrary to or an objectively unreasonable application of federal law that was clearly established by the Supreme Court. *Lockyer*, 538 U.S. at 72-77.

A plurality of the Supreme Court has held that the Eighth Amendment does not require strict proportionality between the crime and sentence. *See Harmelin*, 501 U.S. at 965. As the Supreme Court observed in *Lockyer*, it generally is recognized after *Harmelin* that the Cruel and Unusual Punishment Clause of the Eighth Amendment forbids only an extreme disparity between crime and sentence, that is, sentences that are "grossly disproportionate" to the crime. *Id*. at 1001 (Kennedy, J., concurring); *see also Coleman v. Mitchell*, 268 F.3d 417, 453 (6th Cir. 2001) (citing *Coker v. Georgia*, 433 U.S. 584, 592 (1977)); *United States v. Hopper*, 941 F.2d 419, 422 (6th Cir. 1991).

"Outside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare." *Rummel*, 445 U.S. at 272. Rummel was convicted of obtaining $120.75 by false pretenses, a crime punishable by at least two years but not more than ten years in prison. He was sentenced as a recidivist to life imprisonment with the possibility of parole. His two prior felonies consisted of fraudulent use of a credit card to obtain $80 worth of goods and services, a felony punishable by two to ten years in prison; and passing a forged check

-19-

for $28.36, a crime punishable by two to five years in prison.  The Supreme Court held that Rummel's life sentence under the state recidivist statute did not constitute cruel and unusual punishment.  In *Harmelin*, the Supreme Court upheld a life sentence without the possibility of parole for possession of more than 650 grams of cocaine for an offender with no prior felony convictions.

The Supreme Court overturned a life sentence in *Solem* on the ground that it was significantly disproportionate to Helm's crime and therefore prohibited by the Eighth Amendment. However, Helm had been sentenced to life imprisonment *without* the possibility of parole for uttering a "no account" check for $100, and his prior felonies also were minor, nonviolent crimes. By contrast, the Supreme Court reaffirmed *Rummel* and found constitutional a sentence of twenty-five years to life imposed upon a fifth felony conviction.  *See Ewing v. California*, 538 U.S. 11, 24-31 (2003).

In this case, the Court does not believe that the petitioner's sentence of seventeen to thirty years for armed robbery violated the Eighth Amendment.  The petitioner entered the home of an elderly woman, demanded her keys and money, threatened her with a knife, and cut her phone lines as she watched.  The sentencing court's justification for the prison term was rational in light of the record in this case.

Michigan law allowed a prison term of life or any number of years for the offense of armed robbery.  Mich. Comp. Laws §750.529.  The challenged sentence fell within the maximum sentence set by state law, and "a sentence within the statutory maximum set by statute generally does not constitute 'cruel and unusual punishment.'" *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995) (citation omitted) (quoted with approval in *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000)). "As long as the sentence remains within the statutory limits, trial courts have historically been given

-20-

wide discretion in determining 'the type and extent of punishment for convicted defendants.'"
*Austin*, 213 F.3d at 301 (quoting *Williams*, 337 U.S. at 245).  Accordingly, given the nature of the
offense, this Court finds that the petitioner's sentence does not offend the Eighth Amendment and
he is therefore not entitled to habeas corpus relief with respect to this claim.

III.

The state court decisions in this case were not contrary to federal law, an unreasonable
application of federal law, or an unreasonable determination of the facts.  The petitioner has not
established that he is in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: August 22, 2006

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served
upon each attorney or party of record herein by electronic means or first
class U.S. mail on August 22, 2006.

s/Tracy A. Jacobs
TRACY A. JACOBS

---